ALAN R. SMITH, ESQ.
Nevada Bar No. 1449
Law Offices of Alan R. Smith
505 Ridge Street
Reno, Nevada 89501
Telephone (775) 786-4579
Facsimile (775) 786-3066
Email: mail@asmithlaw.com

Attorney for Debtor

*ELECTRONICALLY FILED*
*January 18, 2011*

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

—ooOoo—

In Re:

ELKO GOLD MINE, LLC,

        Debtor.

_____/

Case No. BK-N-11-50084-BTB
Chapter 11

**MOTION FOR ORDER
(1) AUTHORIZING USE OF
CASH COLLATERAL;
(2) AUTHORIZING PAYMENT
OF PRE-PETITION WAGES; and
(3) PROHIBITING TERMINATION
OF FRANCHISE AGREEMENT**

Hearing: First Day Motion

Debtor, ELKO GOLD MINE, LLC, a Nevada limited liability company ("Debtor"), the debtor in possession in the above-captioned chapter 11 case, hereby moves the Court for an order: (1) authorizing the Debtor's use cash collateral; (2) authorizing the Debtor to pay pre-petition wages, and (3) prohibiting termination of franchise agreement. This Motion is based on the following memorandum of points and authorities and the Declaration Jagmohan Dhillon filed herewith.

### MEMORANDUM OF POINTS OF AUTHORITIES

**A.   Background Facts**

1. Debtor filed its voluntary petition under Chapter 11 of the United States Bankruptcy Code on January 10, 2011 (the "Petition Date").

2. The Debtor owns certain real property identified as a Best Western Elko Inn located at 1930 Idaho Street, Elko, NV 89801 (the "Property"). The Property is operated as

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579

H:\Elko Gold Mine\Mot Use CC pay wages 011811-lpb.wpd

a hotel under a franchise agreement with Best Western International ("BWI"), and is comprised of 108 rooms upon approximately two acres of property.

3. The Debtor's Property is subject to two secured loans as follows:

        City of Elko        $ 135,683.00 (estimated)

        Excel National Bank        $4,955,409.00 (estimated)

Prior to commencement of this Chapter 11 case, the Debtor was in default in the payments to Excel National Bank (the "Bank") by failing to make payments or by making only partial payments since August 24, 2010. The Debtor attempted to reach an agreement with Excel National Bank pre-petition, but was unable to do so.

4. Prior to the Petition Date, the Bank commenced an action in the Superior Court of California, County of Los Angeles, West District, entitled Excel National Bank v. Elko Gold Mine, LLC, et al., Case No. SC1110298 (the "State Action"). The Bank also filed Plaintiff's Ex Parte Application And Memorandum Of Points And Authorities in Support Of: (1) Appointment of Rents, Issues and Profits Receiver; (2) Order To Show Cause Why Receiver Should Not Be Confirmed *Pendente Lite*; (3) Temporary Restraining Order; and (4) Order To Show Cause Why Preliminary Injunction Should Not Be Granted; Or In The Alternative, For The (1) Issuance Of Temporary Restraining Order; (2) Order To Show Cause Why A Receiver Should Not Be Appointed, and Why A Preliminary Injunction Should Not Issue; and (3) Order Shortening Time For Hearing On Plaintiff's Application (the "Receivership Motion"). This Chapter 11 case was filed prior to the hearing on the Receivership Motion, which was stayed pursuant to the automatic stay.

5. In year 2009 and through mid-2010, Debtor experienced a decrease in room occupancy and a resulting decrease in revenue. As of the date of this Motion, occupancy and resulting revenues have increased. In addition, in 2009 the Bank agreed to provide additional financing in the amount of approximately $2,000,000.00 to pay off certain debts of the Debtor, and to completed certain renovations of the Debtor required to meet franchise obligations and to improve the appearance of the Property. This financing was never completed by the Bank.

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579

H:\Elko Gold Mine\Mot Use CC pay wages 011811-lpb.wpd

- 2 -

6.    The Debtor continues to operate its business and no trustee or examiner has been appointed, nor have any committees been appointed by the United States Trustee.

7.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2).

**B.    Proposed Use of Cash Collateral**

As addressed below, the income generated by the Debtor's rental of rooms is cash collateral (the "Cash Collateral") subject to the security interest of the Bank. The Debtor needs immediate authority to use the Cash Collateral for its daily operations. Attached hereto as **Exhibit "A"** is the Debtor's projections for the use of the Cash Collateral for the next twelve months (the "Budget"). Debtor requests that it be authorized to pay the expenses identified in the Budget, and that all excess Cash Collateral be paid to the Bank by the 20th day of each month for the previous monthly period. Debtor further requests that it be allowed to deviate from its budget for actual expenses incurred by an amount not to exceed an aggregate of 10% of the total expenses.

For the most part, items identified in the Budget are self explanatory. "Professional Legal Fees" refers to legal expenses to be incurred in this Chapter 11 case, as well as other legal expenses associated with operating. Debtor acknowledges that such request is subject to approval of the Bank. The "Management Fee" is payable to Dhillon Management, LLC and is compensation for payroll preparation and supervision, federal and state tax returns and reports, payment of accounts payable, collection of accounts receivable, supplies and freight, and oversight and supervision of employees.

The income projected in the Budget is estimated based upon historical information and projected industry trends.

As of the date of this Motion, the Bank has not consented to the use of the Cash Collateral.

**C.    Legal Basis For Use of Cash Collateral**

Pursuant to Section 363(a) of the Bankruptcy Code, the income generated from the rental of rooms is cash collateral. Under Section 363(c)(2) of the Bankruptcy Code, the

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\Elko Gold Mine\Mot Use CC pay wages 011811-lpb.wpd    - 3 -

Debtor may not use cash collateral without the consent of the Bank or authority granted by the court.

The Debtor, as debtor-in-possession of the estate, has the duty to protect and conserve property in its possession for the benefit of creditors. *In re Devers*, 759 F.2d 751 (9th Cir. 1985). The exact nature of the duty owed by a debtor-in-possession of the estate was defined in *In re Morning Star Ranch Resorts*, 64 B. R. 818 (Bkrtcy. D. Colo. 1986):

> The debtor is a fiduciary and operates the property as a fiduciary for the parties in interest. He has obligations to operate the property in good fashion, to pay the expenses of operation and the cost of maintenance, to preserve and protect the property, and to account for the monies received and the expenses paid.

64 B.R. at 822.

The Debtor proposes that, with the Court's permission, it be allowed to continue to operate its business by continued use of Cash Collateral under the terms set forth herein. The income fluctuates monthly, depending on room occupancy. The projections in the Budget are based on historical information, and minor projected increases. The monthly net income will be paid to the Lender. In addition, the Debtor proposes to grant the Lender a replacement lien in all future income generated by operation of the Property.

Under Section 361 of the Bankruptcy Code, the Debtor may provide adequate protection by making periodic cash payments "to such entity, to the extent that . . . any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property." 11 U.S.C. §361(1). Adequate protection may also be provided by providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property. 11 U.S.C. § 361(2).

The proposed adequate protection for the Bank is expected to be sufficient to protect the Bank from diminution in the value of its interest in the Cash Collateral during the period it is used by the Debtors. *See In re Kain*, 86 B.R. 506, 513 (Bankr. W.D. Mich. 1988); *In re Beker Indus. Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986).

The law is clear that preservation of the value of a secured creditor's lien is sufficient

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579

H:\Elko Gold Mine\Mot Use CC pay wages 011811-lpb.wpd

- 4 -

to provide adequate protection to a secured creditor when a debtor seeks to use cash collateral. *In re Triplett*, 87 B.R. 25 (Bankr. W.D.Tex. 1988). *See also, In re Stein*, 19 B.R. 458 (Bankr. E.D.Pa. 1982). In *Stein*, the Court found that, as a general rule, a debtor may use cash collateral where such use would enhance or preserve the value of the collateral, and allowed the debtor therein to use cash collateral even though the secured party had no equity cushion for protection. The *Stein* Court determined that the use of cash collateral was necessary to the continued operations of the debtor, and that the creditor's secured position could only be enhanced by the continued operation of the debtor's business. *See also, In re McCombs Properties VI, Ltd.*, 88 B.R. 261 (Bankr. C.D. Cal. 1988), the court determined that the debtor's use of cash collateral for needed repairs, renovations and operating expenses eliminated the risk of diminution in the creditor's interest in the cash collateral and such use would more likely increase cash collateral. Additionally, in determining adequate protection, courts have stressed the importance of promoting a debtor's reorganization. In *In re O'Connor*, Circuit stated:

> "In this case, debtors, in the midst of a Chapter 11 proceeding, have proposed to deal with cash collateral for the purpose of enhancing the prospects of reorganization. This quest is the ultimate goal of Chapter 11. Hence, the Debtor's efforts are not only to be encouraged, but also their efforts during the administration of the proceeding are to be measured in light of that quest. Because the ultimate benefit to be achieved by a successful reorganization inures to all the creditors of the estate, a fair opportunity must be given to the Debtor to achieve that end. Thus, while interests of the secured creditor whose property rights are of concern to the court, the interests of all other creditors also have bearing upon the question of whether use of cash collateral shall be permitted during the early stages of administration."

808 F.2d at 1937.

The Debtor believes that the proposed adequate protection is fair and reasonable and more than sufficient to provide adequate protection for the use of the Cash Collateral.

**D.    Payment of Pre-Petition Wages**

As of the Petition Date, the Debtor owed wages as specifically set forth in the chart attached hereto as **Exhibit "B."** The Debtor pays wages every other Friday. Since the case was filed on a Monday, the salaries in Exhibit "B" are prorated to identify only pre-petition amounts.

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579

H:\Elko Gold Mine\Mot Use CC pay wages 011811-lpb.wpd

- 5 -

The Debtor seeks authority to pay its pre-petition wages. The total pre-petition salaries and wages owed are $7,878.81. The Debtor's ability to reorganize and preserve its business is dependent upon the continued service of its employees. Failure to pay any pre-petition wage claim will result in serious disruption of the Debtor's business.

E.   **Legal Authority For Payment Of Pre-Petition Wage Claims**

Bankruptcy Code Sections 507(a)(3) and (a)(4) of the Bankruptcy Code give priority up to $11,725.00 per individual for pre-petition claims for wages, salaries, commissions, vacation and sick leave and claims for contributions to employee benefit plans. The Debtor believes that the pre-petition salary and wage amounts that the Debtor seeks to pay the employees are entitled to priority under Bankruptcy Code Section 507(a)(3) and that no employees will be owed more than $11,725.00 for wages and salaries as of the Petition Date.

This Court should authorize the Debtor under Bankruptcy Code Section 105(a) to pay all of the pre-petition employee obligations in full. Specifically, Bankruptcy Code Section 105(a) provides that "the court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

Under the "necessity of payment" doctrine, first enunciated by the Supreme Court in *Miltenberger v. Logansport, C. & S.W.R. Co.*, 106 U.S. 286 (1882), a bankruptcy court may use its Bankruptcy Code Section 105 equitable powers to permit a debtor-in-possession to pay pre-petition claims when payment is necessary to effectuate a successful reorganization. *See In re Lehigh & New England Rv. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (necessity of payment doctrine "teaches no more than, if payment of a claim which arose prior to reorganization is essential to the continued operation of the [business] during the reorganization, payment may be authorized even if it is made out of corpus").

The continued service and dedication of the employee is critical to the Debtor. For instance, in *In re Ionosphere Clubs, Inc.*, 98 B.R. 174 (Bankr. S.D.N.Y. 1989), the court permitted Eastern Air Lines, Inc. ("EAL") to pay its current employees' prebankruptcy wages, salaries, medical benefits and business expense claims, relying on Bankruptcy Code Section 105(a) to effectuate a restructuring of EAL's finances to provide jobs for its

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\Elko Gold Mine\Mot Use CC pay wages 011811-lpb.wpd         - 6 -

employees. *See Id.* at 177 (citing H.R. Rep. No. 95-595 at 16 (1977)).

This and other Courts have invoked their Bankruptcy Code Section 105(a) equitable powers on numerous occasions to authorize the payment of pre-petition employee claims when, as in this case, nonpayment or delay would damage a debtor's business or its ability to effect a successful reorganization. *See e.g. In re National Airlines, Inc.*, Case No. 00-19258-LBR (Bankr. D. Nev. Dec. 7, 2000); *In re Einstein/Noah Bagel Corp.*, Case Nos. 00-0447-ECF-CGC and 00-0448-ECF-CGC (Bankr. D. Ariz. April 28, 2000); *In re Pegasus Gold Corp.*, Case No. 98-30088-GWZ (Bankr. D. Nev. Jan. 23, 1998); *In re Air Transport Int'l Ltd. Liability Co.*, Case No. 98-30248-GWZ (Bankr. D. Nev. Feb. 4, 1998); *In re Stone & Webster Inc.*, Case No. 00-2142 (RRM) (D. Del. June 5, 2000).

**F.    Requiring Franchisor To Maintain Debtor's Booking System**

Debtor operates under a franchise agreement with BWI. The Debtor was in default under the franchise agreement pre-petition, however the franchise agreement was not terminated. The Debtor operates as a Best Western hotel, which is critical to the Debtor's successful reorganization. Under the franchise agreement, BWI provides booking services for the Debtor's operations. For example, potential customers can access the BWI website and through that website book a room at the Property. Prior to filing the petition in this case, BWI terminated the Debtor's booking services by reason of non-payment. BWI demanded a certain payment amount in order to reinstate the booking services. Post-petition, the Debtor intends to assume, pay and cure the franchise agreement with BWI which is an executory contract. Specifically, the Debtor will continue to make regular payments owed to BWI, and will provide for a cure either in its plan, or on earlier date if brought before the Court on motion. Debtor seeks an order requiring BWI to continue to provide its booking services to the Debtor.

The Debtor's franchise agreement with BWI is an executory contract which the Debtor intends to assume. The franchise agreement is property of the estate. An executory contract that is property of the estate can only be terminated after grant of relief from the stay. *See In re Computer Communications, Inc.*, 824 F.2d 725, 729-30 (9th Cir. 1987); *In re*

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\Elko Gold Mine\Mot Use CC pay wages 011811-lpb.wpd     - 7 -

1  *Carroll*, 903 F.2d 1266 (9th Cir. 1990). An executory contract cannot be unilaterally terminated by the non-debtor party. *In re Olson*, 2006 Bank. LEXIS 4823 (9th Cir. BAP 2006).

Any attempt to terminate, in whole or in part, the Debtor's franchise agreement is prohibited as a violation of the automatic stay. Accordingly, the Debtor requests an order requiring BWI to comply with the terms of the franchise agreement with respect to the booking procedures for the Debtor's Property.

### G.  Conclusion and Relief Requested

Based upon the above points and authorities, Debtor respectfully requests an order:

1. Authorizing the Debtor to use Cash Collateral in accordance with the Budget, to allow 10% aggregate deviation from the Budget, to pay monthly to the Bank all Cash Collateral in excess of the Budget, and to grant the Bank a replacement lien on all post-petition Cash Collateral.

2. To authorize the Debtor to pay all pre-petition wages and salaries to employees as identified in Exhibit "B."

3. To require Best Western International to comply with the booking procedures under the franchise agreement.

4. For such other and further relief as may be appropriate under the circumstances.

Dated this 18th day of January, 2011.

                LAW OFFICES OF ALAN R. SMITH

                By:   */s/ Alan R. Smith*
                    ALAN R. SMITH, ESQ.
                    Co-Counsel for Debtor

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579

H:\Elko Gold Mine\Mot Use CC pay wages 011811-lpb.wpd

- 8 -

# Exhibit "A"

Elko Gold Mine LLC

| Monthly Period Jan 2011 - Jan 2012 | 1<br>Jan-11 | 2<br>Feb-11 | 3<br>Mar-11 | 4<br>Apr-11 | 5<br>May-11 | 6<br>Jun-11 | 7<br>Jul-11 | 8<br>Aug-11 | 9<br>Sep-11 | 10<br>Oct-11 | 11<br>Nov-11 | 12<br>Dec-11 | 13<br>Jan-12 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Tax Collected | 15,686.16 | 12,513.35 | 14,508.00 | 13,373.40 | 11,159.76 | 14,821.44 | 21,190.44 | 23,352.72 | 20,935.68 | 17,785.68 | 15,308.52 | 15,436.68 | 17,254.78 |
| Net Revenue - Rooms | 130,718.00 | 104,277.93 | 120,900.00 | 111,445.00 | 92,998.00 | 123,512.00 | 176,587.00 | 194,606.00 | 174,464.00 | 148,214.00 | 127,571.00 | 128,639.00 | 143,789.80 |
|  |  |  |  |  |  |  |  |  |  |  |  |  | 780.88 |
| Total Gross Cash Receipts | 146,404.16 | 116,791.28 | 135,408.00 | 124,818.40 | 104,157.76 | 138,333.44 | 197,777.44 | 217,958.72 | 195,399.68 | 165,999.68 | 142,879.52 | 144,075.68 | 161,825.46 |
| Salaries and Wages | 27,450.78 | 22,941.14 | 21,762.00 | 22,289.00 | 15,809.66 | 29,642.88 | 33,551.53 | 29,190.90 | 29,658.88 | 22,232.10 | 20,411.36 | 30,873.36 | 30,359.84 |
| Payroll Taxes | 3,921.54 | 3,128.34 | 3,627.00 | 3,343.35 | 2,789.94 | 3,705.36 | 5,297.61 | 5,838.18 | 5,233.92 | 4,446.42 | 3,827.13 | 3,859.17 | 4,337.12 |
| Employee Benefits |  |  |  |  |  | 100.00 |  |  |  |  |  | 1,500.00 |  |
| Total Payroll Expense | 31,372.32 | 26,069.48 | 25,389.00 | 25,632.35 | 18,599.60 | 33,448.24 | 38,849.14 | 35,029.08 | 34,892.80 | 26,678.52 | 24,238.49 | 36,232.53 | 34,696.96 |
| **Operational Expense** |  |  |  |  |  |  |  |  |  |  |  |  |  |
| Comp Brkf Food/Supplies | 6,535.90 | 5,213.90 | 6,045.00 | 5,572.25 | 4,649.90 | 6,175.60 | 8,829.35 | 9,730.30 | 8,723.20 | 7,410.70 | 6,378.55 | 6,431.95 # | 7,228.53 |
| Operating Supplies | 6,535.90 | 5,213.90 | 6,045.00 | 5,572.25 | 4,649.90 | 6,175.60 | 8,829.35 | 9,730.30 | 8,723.20 | 7,410.70 | 6,378.55 | 6,431.95 # | 7,228.53 |
| Operating Services | 3,921.54 | 3,128.34 | 3,627.00 | 3,343.35 | 2,789.94 | 3,705.36 | 5,297.61 | 5,838.18 | 5,233.92 | 4,446.42 | 3,827.13 | 3,859.17 # | 4,337.12 |
| Office Supplies | 392.15 | 312.83 | 362.70 | 334.34 | 278.99 | 370.54 | 529.76 | 583.82 | 523.39 | 444.64 | 382.71 | 385.92 # | 433.71 |
| Professional & Legal Fees | 5,228.72 | 4,171.12 | 4,836.00 | 4,457.80 | 3,719.92 | 4,940.48 | 7,063.48 | 7,784.24 | 6,978.56 | 5,928.56 | 5,102.84 | 5,145.56 | 5,782.83 |
| Travel Agent Commission | 653.59 | 521.39 | 604.50 | 557.23 | 464.99 | 617.56 | 882.94 | 973.03 | 872.32 | 741.07 | 637.86 | 643.20 # | 722.85 |
| Dry Cleaning | 130.72 | 104.28 | 120.90 | 111.45 | 93.00 | 123.51 | 176.59 | 194.61 | 174.46 | 148.21 | 127.57 | 128.64 | 144.57 |
| Franchise Fees | 13,071.80 | 10,427.79 | 12,090.00 | 11,144.50 | 9,299.80 | 12,351.20 | 17,658.70 | 19,460.60 | 17,446.40 | 14,821.40 | 12,757.10 | 12,863.90 # | 14,457.07 |
| Employee Training | 13.07 | 10.43 | 12.09 | 11.14 | 9.30 | 12.35 | 17.66 | 19.46 | 17.45 | 14.82 | 12.76 | 12.86 | 14.46 |
| Travel Expense | 653.59 | 521.39 | 604.50 | 557.23 | 464.99 | 617.56 | 882.94 | 973.03 | 872.32 | 741.07 | 637.86 | 643.20 | 722.85 |
| Postage & Freight | 196.08 | 156.42 | 181.35 | 167.17 | 139.50 | 185.27 | 264.88 | 291.91 | 261.70 | 222.32 | 191.36 | 192.96 | 216.86 |
| License and Tax | 196.08 | 156.42 | 181.35 | 167.17 | 139.50 | 185.27 | 264.88 | 291.91 | 261.70 | 222.32 | 191.36 | 192.96 | 216.86 |
| Management Fee | 5,228.72 | 4,171.12 | 4,836.00 | 4,457.80 | 3,719.92 | 4,940.48 | 7,063.48 | 7,784.24 | 6,978.56 | 5,928.56 | 5,102.84 | 5,145.56 | 5,782.83 |
| Charitable Contributions |  |  |  |  |  | 500.00 |  |  |  |  |  | 500.00 |  |
| Dues and Subscriptions | 261.44 | 208.56 | 241.80 | 222.89 | 186.00 | 247.02 | 353.17 | 389.21 | 348.93 | 296.43 | 255.14 | 257.28 # | 289.14 |
| Software Comm and Internet | 980.39 | 782.08 | 906.75 | 835.84 | 697.49 | 926.34 | 1,324.40 | 1,459.55 | 1,308.48 | 1,111.61 | 956.78 | 964.79 # | 1,084.28 |
| Bank Charges | 52.29 | 41.71 | 48.36 | 44.58 | 37.20 | 49.40 | 70.63 | 77.84 | 69.79 | 59.29 | 51.03 | 51.46 | 57.83 |
| Credit Card Merchant Fees | 3,267.95 | 2,606.95 | 3,022.50 | 2,786.13 | 2,324.95 | 3,087.80 | 4,414.68 | 4,865.15 | 4,361.60 | 3,705.35 | 3,189.28 | 3,215.98 # | 3,614.27 |
| Insurance | 2,222.21 | 1,772.72 | 2,055.30 | 1,894.57 | 1,580.97 | 2,099.70 | 3,001.98 | 3,308.30 | 2,965.89 | 2,519.64 | 2,168.71 | 2,186.86 | 2,457.70 |
| Pest Control | 104.57 | 83.42 | 96.72 | 89.16 | 74.40 | 98.81 | 141.27 | 155.68 | 139.57 | 118.57 | 102.06 | 102.91 | 115.66 |
| Repair & Maintenances | 7,843.08 | 4,171.12 | 7,254.00 | 6,686.70 | 5,579.88 | 7,410.72 | 10,595.22 | 11,676.36 | 10,467.84 | 8,892.84 | 7,654.26 | 7,718.34 | 8,674.24 |
| Utilities | 13,071.80 | 10,427.79 | 12,090.00 | 11,144.50 | 9,299.80 | 12,351.20 | 17,658.70 | 19,460.60 | 17,446.40 | 14,821.40 | 12,757.10 | 12,863.90 | 14,457.07 |
| Theft & Loss |  |  |  |  |  |  |  |  |  |  |  | 1,000.00 |  |
| Advertising and Promotion | 1,960.77 | 1,564.17 | 1,813.50 | 1,671.68 | 1,394.97 | 1,852.68 | 2,648.81 | 2,919.09 | 2,616.96 | 2,223.21 | 1,913.57 | 1,929.59 | 2,168.56 |
| Admin & General | 72,522.35 | 55,767.84 | 67,075.32 | 61,829.69 | 51,595.29 | 69,024.46 | 97,970.47 | 107,967.41 | 96,792.63 | 82,229.13 | 70,776.39 | 72,868.92 | 80,207.81 |
| Property Taxes | 4,133.00 | 4,133.00 | 4,133.00 | 4,133.00 | 4,133.00 | 4,133.00 | 4,133.00 | 4,133.00 | 4,133.00 | 4,133.00 | 4,133.00 | 4,133.00 | 4,133.00 |
| Occupancy Tax | 15,686.16 | 12,513.35 | 14,508.00 | 13,373.40 | 11,159.76 | 14,821.44 | 21,190.44 | 23,352.72 | 20,935.68 | 17,785.68 | 15,308.52 | 15,436.68 | 17,254.78 |
| Total Tax Expense | 19,819.16 | 16,646.35 | 18,641.00 | 17,506.40 | 15,292.76 | 18,954.44 | 25,323.44 | 27,485.72 | 25,068.68 | 21,918.68 | 19,441.52 | 19,569.68 | 21,387.78 |
| Total Job Cost | 123,713.83 | 98,483.67 | 111,105.32 | 104,968.44 | 85,487.65 | 121,427.14 | 162,143.05 | 170,482.21 | 156,754.11 | 130,826.33 | 114,456.40 | 128,671.13 | 136,292.55 |
| NOI | 22,690.33 | 18,307.61 | 24,302.68 | 19,849.96 | 18,670.11 | 16,906.30 | 35,634.39 | 47,476.51 | 38,645.57 | 35,173.35 | 28,423.12 | 15,404.55 | 25,532.90 |

* Year from now, the revenue increased is estimated in hopes economy stabilizes.

EXHIBIT "A"

# Exhibit "B"

EXHIBIT "B"

**BEST WESTERN ELKO INN**

| EMPLOYEE NAME<br>Chronological order | Pay Date<br>RATE<br>hr / bi-wk | POSITION | FRI<br>31-Dec | SAT<br>1-Jan | SUN<br>2-Jan | MON<br>3-Jan | TUE<br>4-Jan | WED<br>5-Jan | THUR<br>6-Jan | FRI<br>7-Jan | SAT<br>8-Jan | SUN<br>9-Jan | Total HRs | Total Pay |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ANJANI VIRK | $16.97 | GM | 8.00 | | | 8.00 | 8.00 | 8.00 | 8.00 | 8.00 | | | 48.00 | $814.56 |
| COVARRUBIAS JESUS | $10.00 | HOUSEMAN PT | 8.00 | 8.00 | | | 8.00 | 8.00 | 8.00 | 8.00 | 8.00 | | 56.00 | $560.00 |
| BLANCA SANCHEZ | $8.25 | HOUSEKEEPING PT | 6.00 | 5.00 | 6.00 | | 4.00 | | 6.00 | | 6.50 | 6.00 | 39.50 | $325.88 |
| ESPINOZA FRANCEIA | $8.25 | HOUSEKEEPING PT | | | | 9.00 | 6.00 | 6.00 | 6.00 | 6.00 | 6.50 | 6.00 | 45.50 | $375.38 |
| ESPINOSA GRISELDA | $8.25 | HOUSEKEEPING PT | | | | | | | | | | 6.00 | 6.00 | $49.50 |
| JASON OLSZYNSKI | $8.25 | FRONT DESK PT | 8.00 | 8.00 | | | 8.00 | 8.00 | 8.00 | 8.00 | 9.00 | 8.00 | 65.00 | $536.25 |
| HINJOSA MARIA | $8.25 | HOUSEKEEPING PT | 7.00 | 7.00 | 6.00 | 9.00 | 6.00 | | | 7.00 | 7.50 | 6.00 | 55.50 | $457.88 |
| ROSEILA BANDORIO | $8.25 | BREAKFAST FT | 5.00 | 3.00 | 3.00 | 5.00 | | | 4.00 | 4.00 | 4.50 | 3.50 | 32.00 | $264.00 |
| MENDOZA CLAUDIA E. | $8.50 | FRONT DESK | 8.00 | 8.00 | 8.00 | | | 8.00 | 8.00 | | | 8.00 | 48.00 | $408.00 |
| RAMIREZ CARINA | $8.25 | HOUSEKEEPER PT | 7.00 | 6.00 | | 6.00 | 9.00 | 7.00 | 7.00 | 7.00 | 6.00 | | 55.00 | $453.75 |
| MEGAN WILKIE | $8.25 | HOUSEKEEPER PT | 8.00 | 4.00 | 5.50 | | | | | | | | 17.50 | $144.38 |
| SALAZAR MARIA | $8.25 | HOUSEKEEEPER PT | | 5.00 | 6.00 | 6.00 | 6.00 | 6.00 | | 6.00 | 6.50 | | 41.50 | $342.38 |
| THOMAS W. JINKINS | $10.00 | MAINTENANCE FT | 7.50 | 9.00 | 8.00 | 13.50 | 4.50 | | | 7.50 | 4.00 | 7.50 | 61.50 | $615.00 |
| TINOCO JUANA | $8.25 | HOUSEKEEPER PT | 6.00 | 5.00 | 6.00 | 6.00 | 6.00 | 6.00 | | | | 6.00 | 41.00 | $338.25 |
| VILLALOBOS MARIA | $9.00 | HOUSEKEEPING FT | | | 8.00 | 11.00 | 8.00 | 8.00 | 8.00 | | | 8.00 | 51.00 | $459.00 |
| WILDRIDGE DERRICK | $9.25 | FRONT DESK FT | | | 4.00 | 13.00 | 8.00 | 8.00 | 8.00 | 8.00 | 8.00 | 7.00 | 64.00 | $592.00 |
| WOODS FELISHA | $8.25 | FRONT DESK PT | | 8.00 | 8.00 | | 8.00 | | 8.00 | | 8.00 | 8.00 | 48.00 | $396.00 |
| RICHARDS JOSHUA | $8.25 | BREAKFAST FT | | | 4.00 | 5.00 | 6.50 | 6.50 | | | | 4.50 | 26.50 | $218.63 |
| JOSHUA GUZMAN | $8.25 | FRONT DESK PT | 8.00 | 8.00 | 8.00 | 8.00 | 8.00 | | | 8.00 | 8.00 | 8.00 | 64.00 | $528.00 |
| TOTALS | | | | | | | | | | | | | 865.50 | $7,878.81 |