Michael G. Helms (admitted *pro hac vice*)
**THE HELMS LAW FIRM, P.L.C.**
2600 North Central Avenue, Suite 940
Phoenix, Arizona 85004
Telephone: (602) 358-2060
Fax: (602) 358-2055
mghelms@mghlawfirm.com
Attorneys for Best Western International, Inc.

**IN THE UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

In re:

ELKO GOLD MINE,

    Debtor.

Case No. BK-11-50084-BTB

Chapter 11

## RESPONSE OF BEST WESTERN INTERNATIONAL, INC., IN OPPOSITION TO MOTION TO APPROVE ASSUMPTION OF EXECUTORY CONTRACT

Best Western International, Inc. ("Best Western"), a creditor and interested party herein, submits the following Response in Opposition to Debtor's Motion to Approve Assumption of Executory Contract:

**Background.**

Best Western International, Inc. ("Best Western") is a non-profit corporation organized under the laws of the State of Arizona with its headquarters located in Phoenix, Arizona. Best Western operates as a membership organization consisting of individually owned and operated hotels (i.e., its members). The rights and obligations of Best Western's members are determined by the membership and are set forth in the Membership Agreement and in Best Western's Bylaws. Additionally, Best Western's Board of

Directors, which is comprised of individual Best Western members and elected by the members, establishes Best Western's Rules and Regulations (the "Rules and Regulations").

Best Western provides its members with a worldwide reservation system and worldwide marketing campaigns, as well as an option to participate in collective purchasing of hotel equipment, furnishings and supplies (the "Best Western Services"). Each Best Western member is authorized to use the Best Western name, logos, trademarks, service marks and collective membership marks in connection with its hotel pursuant to a limited, non-exclusive license (the "Best Western License"), which is set forth in the Membership Agreement. Dues and fees for the Best Western Services, and amounts owed for items obtained through use of the collective purchasing, are billed to the member's Best Western account, and are payable monthly.

Elko Gold Mine (hereafter, "Debtor"), owns and operates the hotel known as the Best Western Elko Inn located in or near Elko, Nevada (the "Hotel"). In October of 2008, the Debtor executed a Best Western Membership Agreement with respect to the Hotel. Upon Best Western's conditional approval of Debtor's Membership Agreement, Debtor's Hotel became affiliated with Best Western, and the Membership Agreement, as modified by the conditional approval agreement, became the contract controlling the relationship between the Debtor and Best Western.

The term of the Best Western Membership Agreement is through the end of Best Western's current fiscal year, which ends on November 30. See, Membership Agreement, para. 14. The Debtor may terminate the Membership Agreement at any time, but pursuant

to the Best Western Bylaws must pay fees and dues for the remainder of the fiscal year. See, Best Western Bylaws, Article II, Section 5. The agreement may be renewed for additional one-year terms in accordance with the Best Western Bylaws, which require payment in full of the annual dues (separate and distinct from monthly fees and dues) by September 15 of the current year.

**Default of Membership Agreement.**

The Debtor failed to pay its account balance with respect to the monthly fees, dues and assessments, and for goods and services provided by Best Western to Debtor, prior to the filing of Debtor's petition for relief herein. The amount due and owing from Debtor to Best Western by reason of its pre-petition defaults is $106,555.84, plus interest at the rate of 1 ½% per month from and after January 1, 2011.

Prior to the commencement of its bankruptcy case, the Debtor made several agreements with Best Western concerning payment of its delinquent account balance, and breached the terms of each agreement through non-payment, issuance of insufficient funds checks, and stopping payment on checks. During the fifteen (15) month period immediately preceding its bankruptcy filing, the Debtor made, and breached, at least eight (8) payment plans; issued five (5) insufficient funds checks to Best Western, and stopped payment on two additional checks to Best Western.

**Debtor's Proposal**

The Debtor acknowledges the amount of its past due account to Best Western, and proposes in its Motion to "cure" such past defaults by paying the amount of $106,555.84 in

twenty-four (24) monthly installments. The Debtor further proposes to pay current obligations accruing under the Membership Agreement as they become due. The Debtor provides no assurance of cure of its past defaults or of future performance beyond its bare statement that it will pay its obligations.

## ARGUMENT

### Debtor's Proposal would not "Cure" its past defaults

On its face, Debtor's proposal would be insufficient to "cure" its past defaults. Pursuant to the Membership Agreement, interest accrues on Debtor's past due balance owing to Best Western in the amount of 1 ½% per month Membership Agreement, para. 12). Interest on Debtor's account balance currently accrues at approximately $1,600 per month. The Debtor has not proposed to pay any of the interest accruing on its account balance.

In addition, the Membership Agreement provides, at paragraph 36, that the Debtor must pay all of Best Western's attorney's fees, costs and expenses incurred in connection with the breach of Debtor's obligations to Best Western. The Debtor has not proposed to pay any of Best Western's attorney's fees, costs or expenses incurred in this matter.

The Debtor's proposal is insufficient on its face to provide for a "cure" of its defaults under the Membership Agreement.

### The Debtor has not Provided for a "Prompt" Cure of Its Past Defaults

11 U.S.C. § 365(b) requires that the Debtor cure, or provide adequate assurance that it will "promptly cure" any defaults of the agreement in order to assume the Membership

Agreement. Here, the Debtor proposes that it cure its $106,555.84 in defaulted payments by paying Best Western such amount in twenty-four (24) monthly installments. Payment of such arrearage over a period of twenty-four months is not, under the circumstances of this case, "prompt."

As noted, the term of the Best Western Membership Agreement expires on November 30, approximately seven months away. The Membership Agreement further provides that the Debtor may terminate the Best Western membership at any time, and thus might not even continue until November 30. The Debtor acknowledges in its Motion that a cure period of two years on a two year agreement may not be prompt[1], and cites *In re Coors of Mississippi, Inc.*, 27 B.R. 918, 922 (Bankr.N.D.Miss. 1983) in support of its position that a twenty-four month cure period may be "prompt" in this case.

In the *Coors* case, the court was considering a cure period that did not extend beyond the end of the term of the agreement, and a debtor with a history of many years of successful operation. Here, the Debtor is proposing a cure period that extends well beyond the term of the agreement, and comes to the Court with no history of successful operation. A review of prior decisions on this issue fails to reveal a single case where a cure period extending beyond the term of the agreement was considered to be a "prompt" cure. See, e.g., *In re Coffman*, 393 B.R. 829 (BC SD Ohio 2008); *In re Uniq Shoes Corp.*, 316 B.R. 748 (BC SD Fla. 2004); *In re R/P Technologies, Inc.*, 57 B.R. 876 (BC SD Ohio 1985); *In re Gold Standard at Penn, Inc.*, 75 B.R. 669 (BC ED Pa 1987). Indeed, many courts have followed

---

[1] Debtor's Motion, p.3.

the reasoning of the court set forth in *General Motors Acceptance Corp. v. Lawrence*, 11 B.R. 44 (BC ND Ga. 1981) that it is unlikely that a cure period in excess of one year would ever be considered "prompt."

A 24-month cure period is highly disproportionate to the remaining term of the current Membership Agreement, and does not provide for a "prompt cure" of the default by the Debtor. Where, as here, the remaining term of the agreement is less than seven months, and the Debtor could terminate the agreement at any time, Best Western believes that any cure period in excess of 90 days would be inappropriate and would fail to provide for a "prompt cure" under the circumstances of this case.

**The Debtor has Failed to Provide Adequate Assurance of Prompt Cure and Future Performance**

11 U.S.C. § 365(b) also requires the Debtor to provide adequate assurance of its prompt cure and of its future performance in order to assume the membership agreement. In this case, the Debtor has failed to do so.

Best Western agrees that the Court must look to the facts and circumstances of each case to determine whether a Debtor has provided adequate assurance of prompt cure and future performance. A Debtor who seeks to provide adequate assurance of payment, both on its defaulted obligations and on its future obligations, out of future business operations, must show sufficient likelihood of profitability such that court would be reasonable in assuming that debtor could satisfy its obligations under 11 USCS § 365(b)(1). *In re Berkshire Chemical Haulers, Inc.* (1982, BC DC Mass) 20 BR 454, 9 BCD 230, 6 CBC2d

843. Adequate assurance of prompt cure under 11 USCS § 365(b)(1)(A) requires that there be firm commitment to make all payments and at least reasonably demonstrable capability to do so. *In re R.H. Neil, Inc.*, 58 B.R. 969 (BC SD NY 1986). See also, *In re Uniq Shoes Corp.*, *supra* (debtor's motion to assume lease agreement denied because, in view of debtor's history of missed lease payments and its poor financial condition, there was no adequate assurance that it would effect cure); *In re Berkshire Chemical Haulers, Inc.*, 20 B.R. 454 (BC DC Mass. 1982) (assumption of lease denied where debtor never had profitable month of operation and failed to show that it would ever be profitable, and where debtor's proposal for cure contemplated final payment contemporaneous with expiration of lease term); *In re Texas Health Enters.*, 316 B.R. 748 (BC ED Tex. 2000) (evidence did not support finding that debtor had provided adequate assurance of future performance where there were unrefuted examples of debtor's bad faith in carrying out its duties and ample evidence of its non-performance both pre- and post-petition).

*Past payment history*

In this case, the Debtor acquired the Elko Inn in October, 2008, and began operating the hotel as a Best Western hotel at that time. Within one year the Debtor was past due with respect to its Best Western account balance, and made a payment plan with Best Western in October, 2009, to bring its account current. The Debtor immediately defaulted on the terms of that payment plan, and Best Western restricted the hotel from the Best Western reservations system for a period beginning in November, 2009, due to Debtor's late payments.

In December, 2009, the Debtor issued two insufficient funds checks to Best Western in the amount of $25,000.00 each. In January, 2010, Best Western made a new payment plan with Debtor in an effort to bring the account current. The new payment plan required payments of $8,000 on January 15, 2010, $8,000 on January 22, 2010, and $33,000 on February 5, 2010. The Debtor failed to make the first payment due on January 15, 2010, but by the end of March, 2010, had brought the account current.

In April, 2010, the Debtor issued another insufficient funds check to Best Western, in the amount of $3,000. By June, 2010, the Debtor was again more than 60 days past due on its account, and Best Western made another payment plan with Debtor, requiring two payments to be made, on June 24 and July 1, 2010. The Debtor failed to make the July 1, 2010, payment, and Best Western made yet a new payment plan with Debtor, requiring payment of $30,000 by July 9, 2010.

The Debtor failed to make the July 9, 2010, payment, sending instead only $10,000. The Debtor then agreed to pay $10,000 on the account by July 14, but failed to make that payment. Best Western made a new payment plan with Debtor, requiring payments of $7,370 on July 23, and $16,738 by July 30, 2010. The Debtor paid only $5,359 on July 23, and failed to make the July 30 payment. Best Western sent a notice of intended cancellation of the membership to Debtor on September 7, 2010.

The Debtor requested, and obtained from Best Western, yet another payment plan to bring its account current, and entered into a written payment agreement on September 23, 2010, calling for certain monthly payments. Debtor's past due account balance was then

more than $124,000. Debtor failed to make the December 5, 2010 payment, and on December 15, 2010 a new payment plan was made in an effort to bring the account current. This plan required payments of $17,500.00 each on December 17 and December 31, with additional payments to be made monthly through April 30, 2011.

In December, 2010, Debtor's hotel was again restricted from the Best Western reservations system for failure to pay the annual renewal dues prior to November 30. The Debtor paid the annual dues on December 9, 2010, and the hotel was reinstated to the reservations system.

On December 27, 2010, Best Western was notified that the Debtor had stopped payment on its December 17, 2011 check. Following discussions with Debtor, a new, written payment agreement was made between Debtor and Best Western on January 10, 2011, again requiring certain monthly payments, starting January 14, 2011. On the same date, January 10, 2011, the Debtor filed its bankruptcy petition herein.

The Debtor's past payment history of its Best Western account provides no assurance to Best Western of Debtor's performance of a prompt cure or of Debtor's future performance of its obligations under the Membership Agreement. Debtor's bare statement that it intends to pay Best Western is insufficient.

*Debtor's financial condition*

The Debtor's financial condition likewise provides no assurance of Debtor's performance of its obligations.

Though the Debtor claims to have expended the sum of approximately

$2,100,000.00 in renovating its hotel since October, 2008, Debtor's bankruptcy schedules filed in this matter reflect that Debtor has actually paid little, if any, of such amount. Notwithstanding such non-payment, the Debtor also appears to have defaulted on its obligations to its primary banking lender, such that its lender, Excel National Bank ("Excel"), had filed a foreclosure action against the hotel prior to the filing of the bankruptcy petition. The Debtor appears to have been unable to pay its mortgage debt, its contractors employed for its remodeling, or its trade debt from its operating revenues in the several months prior to filing its bankruptcy petition. The Debtor has not suggested any means of changing this pattern.

The Debtor has stated that it has suffered, and continues to suffer, a decrease in room occupancy and revenue. The Debtor further states that is has been unable to obtain additional financing from its lender for its operations or to improve its hotel property. The Debtor's sole source of revenue is from the operation of the Elko Inn. Debtor's revenue, however, is cash collateral of Excel. Pursuant to cash collateral orders entered herein, the Debtor is obligated to pay all net operating income to Excel after paying certain budgeted expenses. Those budgeted expenses do not include any cure payments to assume the Best Western Membership Agreement. Excel has not consented to the use of any of its cash collateral for such purpose.

The Debtor has thus far reported average weekly gross revenue (post-petition) of approximately $34,200 per week. Its budgeted operating expenses are approximately $26,700 per week, subject to a 10% fluctuation. Excel is owed, according to Debtor's

schedules, approximately $5,000,000. Interest alone on the Excel debt, assuming an interest rate as low as 5%, would be not less than $4,800 per week. The Debtor has also scheduled more than $192,000 of priority tax claims and more than $477,000 in furniture leasing claims. Even without consideration of the tax claims and furniture leasing claims, this Debtor does not generate sufficient income to provide any assurance of an ability to promptly cure the past due amounts on the Best Western Membership Agreement, or to perform its future obligations pursuant to the agreement.

**The Membership Agreement is not Assumable**

The Membership Agreement cannot be assumed or assigned by the Debtor, *even if* Debtor's default of the Membership Agreement could be cured. Pursuant to § 365(c) of the Bankruptcy Code, an executory contract that cannot be assigned under applicable non-bankruptcy law may not be assumed or assigned without permission of the contracting party. Here, the Debtor holds a non-exclusive, personal membership and license to use the Best Western Marks. Article II, Section 7 of the Best Western Bylaws provides that any change in the ownership of the hotel property will result in the termination of the Membership Agreement. Limited exceptions to such automatic termination are provided, but such exceptions have no application herein. In this case, Debtor's membership is not transferrable or assignable because the Hotel is not compliant with membership requirements and is past due with respect to its Best Western account.

The plain language of § 365(c)(1) requires application of a "hypothetical test," under which a debtor-in-possession may not even assume an executory contract over objection if

applicable law bars the assignment of the contract, <u>even if</u> the debtor-in-possession does not intend to assign the contract to any other party. <u>In re Catapult Entertainment, Inc.</u>, 165 F.3d 747 (9th Cir.), <u>cert.denied</u>, 528 U.S. 924, 120 S.Ct. 369 (1999). "Applicable law" includes the Lanham Act. The Lanham Trademark Act, codified at Chapter 22 of Title 15 of the United States Code, provides that the registrant of a registered mark is entitled to nationwide trademark protection. The Lanham Act prevents the unauthorized use or transfer of a federally registered trademark. In <u>In re Travelot Co.</u>, 286 B.R. 447 (Bankr.D.Ga.2002), CNN sought to prevent the debtor from assuming its contract, arguing the Section 365(c)(1) and the Lanham Act precluded such assumption. The Court found that the Lanham Act constituted "applicable law" and that such statute provided a federal trademark registrant with protection against the unauthorized assignment of a trademark license. Specifically, the Court stated that "[i]f the [CNN contract] provided for [the debtor] to be a recipient of a trademark license, then applicable trademark law precludes the assignment of that trademark."

  Given that non-bankruptcy law prohibits the assignment of personal licenses and non-exclusive intellectual property licenses, most bankruptcy courts and appellate courts, including the 9th Circuit, consistent with Section 365(c)(1), refuse to allow debtors-in-possession to assume or assign such licenses. "[P]revailing case law holds that nonexclusive intellectual property licenses do not give rise to ownership rights and cannot, as a matter of law, be assigned without the consent of the licensor." <u>Golden Books Family Entertainment</u>, 269 B.R. at 310. <u>See also</u>, <u>In re Catapult Entertainment, Inc.</u>, 165 F.3d 747

(9th Cir.) (holding nonexclusive licenses do not give rise to ownership rights and are not assignable over the objection of the licensor).

The Membership Agreement contains a non-exclusive trademark license granted by Best Western to the Debtor to use the Best Western Marks. Based on the foregoing, Section 365(c)(1) of the Bankruptcy Code and applicable law (including the Lanham Act and the case law cited herein) prevent the unauthorized assumption or assignment of the Membership Agreement. Because Best Western does not consent, the Debtor can neither assume nor assign the Membership Agreement.

**Debtor's Request to Delay Consideration of Its Motion**

The Debtor has requested that final consideration of its motion to assume the membership agreement be delayed until the time of confirmation of its proposed Chapter 11 Plan. As of this date, the Debtor has not proposed any Chapter 11 Plan, nor has it filed or sought approval of any Disclosure Statement. This Court previously, on January 28, 2011, directed the Debtor to file its motion to assume the Best Western Membership Agreement not later than February 28, 2011. The Debtor did not file its motion until March 18, 2011. While Debtor's failure to file its motion within the time directed by the Court could have resulted in an automatic rejection of the membership agreement, at a hearing on March 18, 2011, on Best Western's motion for relief from the automatic stay, Debtor's counsel advised the Court that he had misunderstood the Court's direction, and the Court indicated that it would excuse the late filing because of such misunderstanding. The Court, however, did not grant Debtor an extension of its time to seek assumption of the Best Western

Membership Agreement.

The Debtor is substantially past due with respect to its performance of the membership agreement, in a total amount in excess of $106,000. Best Western is a non-profit membership organization. Debtor's failure to pay its Best Western account shifts the burden of the cost of membership services to other Best Western members, who must continue to shoulder the burden of Debtor's membership until such time as the Debtor assumes or rejects the membership agreement.

The Debtor has already expressed the view that the membership agreement is necessary to its reorganization efforts. The only issue are whether the Debtor has the ability to assume the agreement, and whether the agreement is subject to assumption. Those issues can be resolved no, and do not need further delay.

For the foregoing reasons, Best Western requests that Debtor's Motion to Approve Assumption of Executory Contract be denied.

Dated this 25th day of March, 2011.

                    THE HELMS LAW FIRM, P.L.C.

                    By: /s/ Michael G. Helms
                    Michael G. Helms
                    2600 North Central Avenue
                    Suite 940
                    Phoenix, Arizona 85004
                    Telephone: (602) 358-2060
                    Attorney for Best Western International, Inc.

# CERTIFICATE OF SERVICE

I certify that on March 25, 2011, I electronically transmitted the attached document to the Clerkøs Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Alan R. Smith, Esq.
505 Ridge Street
Reno, Nevada 89501
mail@asmithlaw.com

U.S. Trustee ó RN ó 11
300 Booth Street
Suite 2129
Reno, NV 89509
USTPRegoin17.RE.ECF@usdoj.gov

Paul S. Arrow
BUCHALTER NEMER, PC
1000 Wilshire Blvd, Ste. 1500
Los Angeles, CA 90017
parrow@buchalter.com
Attorney for Excel National Bank

/s/ Michael G. Helms